IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:

| | |
|---|---|
| CHARLES E. WAMSLEY, JR. | Bankruptcy Case No. 2:02-bk-22959 |
| Debtor. | Chapter 7 |
| W. CLARKSON MCDOW, JR. | Adversary Proceeding No. 2:04-ap-00044 |
| U.S. TRUSTEE, REGION FOUR | |
| Appellee | |
| v. | District Court Case No. 2:06cv00041 |
| CHARLES E. WAMSLEY, JR., | |
| Appellant. | |

**REPORT AND RECOMMENDATION/OPINION REGARDING
APPEAL FROM UNITED STATES BANKRUPTCY COURT**

The debtor, Charles E. Wamsley, Jr. ("Wamsley") appeals an order from the bankruptcy court that revoked the discharge that had been entered on September 4, 2003, and then denied discharge. The United States Trustee ("Trustee") opposes the Appeal.

I. Background

The debtor, Charles E. Wamsley, Jr. ("Wamsley") filed a voluntary Chapter 11 Bankruptcy Petition on September 11, 2002. At the time of the filing of the Chapter 11 Bankruptcy case the debtor was represented by attorney John F. Wiley of Morgantown, West Virginia. Wamsley terminated Mr. Wiley's representation on July 21, 2003. Wamsley, although an individual, has operated generally in the past in varying entity forms, but has been principally engaged in the construction of residential houses and high-grade level cabinet work.

1

The Bankruptcy Court converted the Chapter 11 reorganization case to a Chapter 7 liquidation case on March 31, 2003. On May 22, 2003, Wamsley filed Amended Schedules in his petition. Thereafter, the Bankruptcy Court granted Wamsley a discharge on September 4, 2003.

This adversary proceeding arose as a result of various omissions in Wamsley's schedules in his bankruptcy petition, as well as the transfer of an interest in two (2) pieces of real estate. Wamsley does not dispute the omissions on the schedules. The United States Trustee ("Trustee") became aware of information, after the discharge, that made him believe there were grounds to revoke the discharge, on the basis that the discharge was obtained through the fraud of the debtor, pursuant to 11 U.S.C. §727(d)(1). Thereafter, the Trustee filed a complaint in the bankruptcy court requesting that the bankruptcy court revoke the discharge. The Complaint set forth the following specific acts committed by Wamsley that the Trustee alleged constituted fraud:

1. Wamsley fraudulently transferred his interest in two parcels of real property within one year before the filing of his petition.

2. When Wamsley filed his bankruptcy case, he failed to disclose the transfers of the real property in his statement of financial affairs and falsely stated under oath he had made no transfers of real property within one year before the petition date.

3. At the first meeting of creditors, Wamsley: 1) falsely testified under oath that the statement of financial affairs was true and correct, and 2) falsely testified under oath that he had made no transfers of real property within one year prior to the petition date.

4. After Wamsley's case was converted to a Chapter 7 liquidation, Wamsley executed an amended statement of financial affairs and again failed to disclose the transfers of the real property and falsely stated under oath that he made no transfers of real property within one

year before the petition date.

5. After the case converted to a Chapter 7 liquidation, Wamsley appeared at a second meeting of creditors and 1) falsely testified under oath that the amended statement of financial affairs was true and correct, and 2) again falsely testified under oath that he had made no transfers of property within one year prior to the petition date.

6. After the case converted to Chapter 7 liquidation, the Trustee took possession of and sold the machinery, equipment, and tools listed by Wamsley in his schedules; Wamsley represented to the Trustee that this machinery, equipment, and tools were the only machinery, equipment, and tools he owned, when, in fact he also owned other machinery, equipment and tools that were not disclosed by Wamsley to the Trustee and were concealed from the Trustee.

7. Prior to the filing of the bankruptcy petition, Wamsley filed certain amended federal income tax returns that showed substantial tax overpayments and requested a refund of those overpayments. Wamsley failed to disclose the pending refund in his original bankruptcy schedules and in his amended bankruptcy schedules, each signed under oath. Furthermore, Wamsley testified under oath at his first and second meeting s of creditors that his schedules and amended schedules were true and correct, when in fact the schedules and amended schedules failed to disclose the pending tax refund. Wamsley received a substantial refund from the Internal Revenue Service shortly thereafter, in the amount of $54,432 and disposed of the funds instead of turning them over to the Trustee as required by law.

Wamsley does not dispute that he failed to disclose the transfer of his interest in two pieces of real property, failed to list items of personal property, and failed to list a possible pending income

tax refund on the schedules, but argues:

1. The possibility of a $46,000.00 tax refund was disclosed in the course of the first §341 meeting that Robert Michael Umberger, an employee of the office of the United States Trustee, conducted. Wamsley and his former counsel, John Wiley, were present. Although the possibility of a refund was discussed, it was not added to the debtor's schedules and there is no indication that Wamsley was given any direction as to how to handle any refund he actually received. Wiley testified that he believed any such refund would not be sent to Wamsley, but would simply be kept by the IRS as an offset of the funds Wamsley owed it.

2. The Chapter 7 Trustee, Mitchell Klein, reported that Wamsley was very cooperative in rounding up all the equipment for auction, but "[a] complication occurred because of the Trustee's impression that he had recovered everything that could be sold at the first sale." The Trustee later received information that caused him to request relief. This was granted and the auctioneer recovered additional items from Wamsley's business location and sold them. The auctioneer testified Wamsley was again very cooperative.

3. One of the real estate transfers Wamsley made was to his brother. Wamsley contends that his terminally ill mother transferred their real estate into Wamsley's and his brother's name. Wamsley contends he was not aware of this transfer and had not paid for the property. He simply transferred his interest in the property to his brother. The other piece of property was a 1/8 acre tract Wamsley transferred to his wife. Wamsley refers to this piece of property as "insignificant."

The Bankruptcy Court held a trial on the Trustee's Complaint on February 22, 2006. At the close of the evidence and arguments, the Court states:

4

As the parties know, this is one of the last cases I'm going to do. I've been a judge for 20 years, and as Mr. Fluharty and Mr. Kilmer are well aware, I did a little calculation over my 20 years. I've had 50,000 cases come by, and if I have the families and calculated them in there, I probably had 110,000 people come through bankruptcy. And given that, I suspect I've only found a revoke - - I've only revoked a discharge in probably less than a dozen cases in 20 ½ years. So there is a rumor going out around there that I'm debtor-oriented, that I have great empathy for debtors that get themselves in trouble, and that I am not as bad a stickler on the schedules as maybe some other people would be. I realize that debtors don't have the typical business background, and that's one of the reasons that they're debtors. There's no doubt about it. In this case - - and this is a tough one - - and I don't like these cases, and I'm fortunate that you two don't bring too many in front of me. Again I want to say something else, I bend overboard and you all know that. You can tell Mr. Wamsley that I've done this forever. I try not - - <u>I don't hold debtors liable for the malpractice of their attorneys. We've had cases where we'll take over and do the case when the attorney isn't doing a good job. Having said that, I want to say that I don't think Mr. Wiley did an excellent job on this case. In the first place, I don't think it was a Chapter 11 case, but I let the attorneys try the Chapter 11. If you look at the debtor's petition, he has $250,000 in priority taxes and $1,200,000 in unsecured debt, and $30,000 to the workman's comp. Now, that is not a good case</u>.

Given that, I'd have to look - - I think Mr. Kilmer had a pretty good observation, is it - - I have to look at the whole thing. <u>And I don't think the debtor lied. I don't think he did anything that was out and out perjury. He didn't.</u> All debtors fudge, and I don't have any problem with that either. It's like taxes, you can cheat a little bit, but if you cheat a lot, you can go to jail. But if you start adding up all the matters in this case, it gives me a real problem. One of the problems I have is with debtors that say, "I don't know what I'm doing. I don't know anything about business. I don't have any books and records. I don't know if I did this." And yet he's holding himself out to go build a hundred - - or a 500,000 or a million-dollar house. I think that's wrong for people to go out and attempt to build houses worth half a million, a million dollars, and then come back and say, "Well, I don't have to keep books. I don't know anything about it. I don't know anything about business." Well, what you should do if you're that type of person is work for somebody.

Now, this is Mr. Wamsley's second bankruptcy. I had him the first time. So he got rid of all those debts the first time. He went back in, and now we've got a federal government that are [sic] going to lose $250,000, we've got the Workman's Comp, they're broke as anybody else, they're going to lose 30, and I've got some nice– I don't even know who they are – 1 million – 1.2 million in unsecured creditors basically on the houses he's built.

I tend not to have a lot of sympathy when I get to that point. I tend to think he should not be in the building business after two tries and that kind of debt, and yet

he can't tell me – he's telling me that my – my – excuse is, "I don't know anything." Well, if you don't know anything, you shouldn't be in business. Part of the 727 that I always harp on is that the debtor is required to keep adequate books and records. Now, there may have been a problem with he and Mr. Wiley, but like Mr. Truman said, the buck stops here, and it's the debtor's duty to disclose what he owes. There is just too much material overstatement of assets back and forth and back and forth.

And let me give you the last straw, Mr. Wamsley. I like you. I'm not mad at you. But when you got that check from the Internal Revenue Service and you didn't send it back to the Internal Revenue Service, because you owed them 200- and-some thousand dollars, you lost my sympathy. Now, you are not a dumb person. And you know the check was sent to you by mistake, and yet you took advantage of it. Now that - - I'm sorry, I've lost my sympathy when you do that. You don't have to call John Wiley. You don't have to call me. You know that they paid you by mistake. Anybody knows that. And you've been a business man for 20 years. You absolutely know that.

Again, I do not like this part of my job. I have a good job. I've had a good job. I like to help people. I like to get them through Chapter 11's. I like to help with 13's. I like to find against nondischargeability cases. I enjoy that. I just can't do it. In all honesty, I just can't do it. I just think that the situation as it stands, and there's too much smoke, just too much going on, and I'm sure that - - I assure you that I bend over backwards to give the debtor every credit that I can given him, especially when they say "I don't have business records." But you have - - if you're going to be in business, there's a responsibility that goes with it.

I don't know what harm it's going to do you, seriously. I'm going to deny the discharge. The taxes are out there for 2 ½ with the Workman's Comp. I suppose that might mean that you can't own anything anymore, but you can't own anything anyway with the Internal Revenue Service having a lien against you. But I am – I'm seriously disappointed, and I've stated the reasons on the record. And I hate to make this one of my last decisions, but I feel obliged to. With that, parting words, we'll adjourn for the day.

(Emphasis added).

## II. Standard of Review

On appeal from the Bankruptcy Court, the District Court acts as an appellate court and reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law de novo. See In re Johnson, 960 F.2d 396, 399 (4th Cir. 1992); (In re Bryson Propr., XVIII), 961 F.2d 496, 499

6

(4th Cir.), cert. denied sub nom., Bryson Prop., XVIII v. Travelers Ins. Co., 506 U.S. 866 (1992).

III. Discussion

This is an adversary proceeding brought by the United States Trustee to revoke Wamsley's discharge. See Fed. R. Bankr.. P. 7001, which provides: "The following are adversary proceedings . . . . (4) a proceeding to object to or revoke a discharge . . . ." The Rule further provides: "An adversary proceeding is governed by the rules of this Part VII."[1] Fed. R. Bankr. P. 7052 provides: "Rule 52 F.R.Civ. P. applies in adversary proceedings." Federal Rules of Civil Procedure Rule 52(a) provides, in pertinent part:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58 . . . . Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility to the witnesses . . . . It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court.

(Emphasis added). The Fourth Circuit holds:

> To satisfy the demands of Rule 52(a), a trial court must do more than announce statements of ultimate fact. The court must support its ruling by spelling out the subordinate facts on which it relies.

O'Neal v. Gresham, 519 F.2d 803 (4th Cir. 1975)(emphasis added). "Unless the trial court fully complies with Rule 52(a), appellate review becomes an exercise in conjecture." U.S. for use of Belcon, Inc. v. Sherman Const. Co. 800 F.2d 1321 (4th Cir. 1986)(emphasis added).

The case at bar was tried upon the facts without a jury. The Court was therefore required

---

[1] Under Rule 9014 some of the Part VII Rules also apply to contested matters. See Advisory committee Notes.

to find the facts specially and state separately its conclusions of law thereon. The Complaint for revocation of Wamsley's discharge was based on fraud. A party may commence a proceeding to request that the bankruptcy court revoke a discharge already granted pursuant to 11 U.S.C. § 727(d), which provides, in pertinent part:

On request of the trustee, a creditor, or the United States Trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if–

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee; or

(3) the debtor committed an act specified in subsection (a)(6) of this section.

Courts within the Fourth Circuit have held that this section is to be liberally construed in favor of the debtor and strictly construed against those objecting to discharge. See In re Vereen, 219 B.R. 691, 694 (Bankr. D.S.C. 1997); In re Lyons, 23 B.R. 123 (Bankr. E.D. Va. 1982). The party requesting revocation of the discharge has the burden of proof. Fed.R.Bankr.P. 4005. The standard of proof is a preponderance of the evidence. Farouki v. Emirates Bank Int'l., Ltd., 14 F.3d 244, 249 (4th Cir. 1994).

Wamsley testified regarding the IRS check that he "just assumed that the IRS had settled what they needed and sent us the check." (Transcript at p. 229). The Bankruptcy Court specifically found Wamsley did not lie and did not commit perjury. If Wamsley did not lie and did not commit

8

perjury, as the Court found, it is difficult to conclude his cashing the check amounted to fraud, although the Court found Wamsley knew the IRS check was sent to him by mistake and he "took advantage of it." Further, there is absolutely no mention of fraud in the findings of fact or conclusions of law, and the undersigned United States Magistrate Judge cannot, without more, reconcile the finding that Wamsley did not lie and did not commit perjury with a finding of fraud. In addition, the Bankruptcy Court reached a conclusion that Wamsley knew the IRS check was sent to him by mistake without reciting any of the subsidiary or subordinate facts he found in order to reach that conclusion. The Bankruptcy Court did not discuss the transfers of real estate or the omission of personal property (tools) from the schedules in its findings. The Court also found Wamsley's attorney "did not do an excellent job."

The Bankruptcy Court did not make a finding of fraud, but nevertheless did "deny the discharge." The undersigned finds that conclusion "is predicated on no articulated subsidiary findings or reasoning." O'Neal, supra at 805. Further:

> [T]he requirement of Rule 52(a) "is not met by the statement of the ultimate fact without the subordinate factual foundations for it which also must be the subject of specific findings." In failing in this case to spell out the subordinate facts on which its ultimate conclusion rested, the Court left to speculation whether the [Bankruptcy] Court felt that [Wamsley had indeed committed fraud or whether its decision was based on some other legal or equitable basis]. Rule 52(a) requires that the findings of "subordinate" facts resolve these issues and be set out in the findings of the [Bankruptcy] Court. Without such findings an appellate court cannot review properly the decision below . . . .

Id. As the Ninth Circuit so aptly stated:

> The standard for adequacy of factual findings . . . is "whether they are explicit enough on the ultimate issues to give the appellate court a clear understanding of the basis of the decision and to enable it to determine the grounds on which the trial court reached its decision." The appellate court may affirm the lower court on any ground fairly supported by the record. Remand is not required when express findings are not made, if "a complete understanding of the issues may be had [from

9

the record] without the aid of separate findings.

In re Leavitt, 171 F.3d 1219(internal citations omitted).

Accordingly, the undersigned United States Magistrate Judge respectfully recommends the order of the United States Bankruptcy Court for the Northern District of West Virginia revoking Wamsley's discharge and denying discharge be VACATED and this matter be REMANDED to the Bankruptcy Court with instructions to make specific and detailed findings of fact and conclusions of law, in order that the parties and reviewing court, if necessary, have a clear understanding of the basis of the decision and to enable it to determine the grounds on which the Bankruptcy Court reached its decision. Necessity the of Bankruptcy Court to conduct a hearing on remand is generally within the court's discretion. See, *e.g.*, In re Mazzocone, 183 B.R. 402 (Bankr. E.D. Pa. 1995), order aff'd., 200 B.R. 568 (E.D. Pa. 1996).

## IV. RECOMMENDATION

For the reasons herein stated, the undersigned United States Magistrate Judge **RECOMMENDS** the order of the United States Bankruptcy Court for the Northern District of West Virginia revoking Wamsley's discharge and denying discharge be **VACATED** and this matter be **REMANDED** to the Bankruptcy Court for further consideration consistent with this Report and Recommendation/Opinion. It is further **RECOMMENDED** that this appeal be **DISMISSED** and **STRICKEN** from the active docket of this Court.

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation/Opinion, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell,

United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 2 day of October, 2006.

/s *John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE